**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**ALBERT C. SMITH FARM**                                                    **PLAINTIFF**

**VS.**                                                      **CAUSE NO.: 2:08CV100-MPM-DAS**

**MONSANTO AG PRODUCTS, LLC,
formerly known as DELTA AND PINE LAND
COMPANY**                                                              **DEFENDANT**

**AMENDED ORDER[1]**

This cause comes before the court on the motion of plaintiff Albert C. Smith Farm to remand. Defendant Monsanto AG Products, LLC, ("Monsanto AG") formerly known as Delta and Pine Land Company ("D&PL") has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is, *inter alia*, a negligence and breach of warranty action arising out of plaintiff's allegation that defendant sold it defective cotton seeds, resulting in considerable crop failures and lost profits. Plaintiff filed suit against D&PL in the Circuit Court of Bolivar County on January 28, 2008, and defendant timely removed the case to this court. Following the corporate

---

[1]This order is identical to this court's original order, other than to correct a mis-statement in the opening paragraph of the original order that defendant, rather than plaintiff, had filed the motion to remand. This is purely a clerical correction and does not alter the relevant post-order deadlines, which shall run from the court's original order.

merger discussed below, defendant changed its name to Monsanto AG Products, LLC, and the style of this case was changed accordingly.

The sole issue in the instant motion to remand is whether, at the time this lawsuit was filed on January 28, 2008, complete diversity existed between plaintiff, a Mississippi resident, and defendant. For purposes of diversity jurisdiction, a corporation is considered to be a citizen of both its state of incorporation and the state where it has its principal place of business. *See* 28 U.S.C. § 1332. It is undisputed that, at the time plaintiff's complaint was filed, defendant was a Delaware corporation, but the parties disagree as to the location of defendant's principal place of business. Plaintiff contends that defendant's business was located in Scott, Mississippi on January 28, 2008, while defendant maintains that its central corporate operations had moved to Missouri shortly before this action was filed.

The Fifth Circuit has adopted the "total activity" test to determine a corporation's principal place of business, and this test requires this court to consider two "focal points," namely the location of the corporation's "nerve center" and its "place of activities." *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 876 (5th Cir. 2004), *citing Grinter v. Petroleum Operation Support Serv.*, 846 F.2d 1006, 1008 (5th Cir. 1988) and *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 406 (5th Cir. 1987). The Fifth Circuit has attached greater importance to a corporation's "nerve center" in cases where "the activity of a corporation is passive" in nature and where its operations are "far flung." *Teal Energy*, 369 F.3d at 876. The district court must balance all of the facts of the case to determine the corporation's principal place of business. *J.A. Olson Co.*, 818 F.2d at 409-10. Significantly, however, it is the defendant, as the removing party, which bears the burden of establishing facts necessary to show that diversity of citizenship

2

existed at the time the action was filed. *Eastus v. Blue Bell Creameries*, 97 F.3d 100, 106 (5th Cir. 1996); *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004).

In the court's view, defendant has failed to establish that its principal place of business had moved from Mississippi to Missouri by the time the instant action was filed. Defendant has, in fact, established that many of its corporate operations were relocated to St. Louis, Missouri after the merger in this case, but, as discussed below, defendant itself continued to refer to Mississippi as being its principal place of business and/or principal address in post-merger corporate filings. The parties agree that D&PL was once headquartered in Scott, Mississippi, but, Monsanto notes that it acquired D&PL as a wholly-owned subsidiary in June 2007 and began moving many of its corporate functions to the headquarters of its corporate parent Monsanto, Company in St. Louis, Missouri.[2] Defendant has submitted numerous affidavits establishing that on June 22, 2007, it appointed an entirely new board of directors and corporate officers, replacing Mississippi residents with Missouri residents. Defendant further notes, based on affidavit evidence in the record, that "as a result of the Monsanto acquisition, D&PL's corporate functions, including its legal, human resources, marketing, quality assurance, and research and development divisions were relocated to St. Louis, Missouri."

Defendant's evidence is sufficient to establish that, at the time of the filing of the instant lawsuit, its corporate administrative functions were being performed in Missouri. This does not end the court's inquiry, however. Plaintiff has submitted several corporate registration reports

---

[2] The court would note that defendant Monsanto Ag Products, LLC is merely a new name for D&PL, which is, after the merger, a wholly owned subsidiary of Monsanto, Company.

prepared by defendant *after* the naming of the aforementioned officers and directors which continue to refer to Scott County, Mississippi as being defendant's principal place of business and/or principal address. For example, plaintiff has submitted an Annual Registration Report prepared by defendant's Assistant Treasurer Kevin Buchanan and submitted to Missouri Secretary of State Robin Carnahan on October 31, 2007. This report lists defendant's new officers and directors and their Missouri addresses, but it nevertheless cites the "principal place of business or corporate headquarters" of the company as being located at "200 Main Street, Scott, MS 38772." An October, 2007 corporate filing in Arizona similarly lists the Missouri addresses of defendant's officers and directors but nevertheless lists its main corporate address as being in Scott, Mississippi.

Defendant does not dispute the authenticity of these exhibits, but it argues that the fact that it listed its officers and directors as being from Missouri supports its contention that its primary place of business is in that state. The court disagrees. If the filings in question had merely listed a Mississippi address and made no mention of Missouri officers or directors then this might support a conclusion that the filing party was merely unaware of the fact that many of the corporate operations had been moved to Missouri and that a simple oversight had occurred. The fact that defendant submitted post-merger filings in multiple states which specifically made mention of its new Missouri officers and directors but which also listed the company's "principal place of business" as being in Mississippi clearly casts doubt upon defendant's primary jurisdictional argument in this case, namely that its principal place of business had moved to Missouri by the time of the filing of this action.

In addition to the foregoing, plaintiff has submitted a corporate filing which was made by defendant *after* the filing of the instant lawsuit and which lists its primary corporate address as being in Mississippi. This document, filed by defendant's Assistant Treasurer Robert L. Brady with the North Carolina Secretary of State on May 13, 2008, is similar to the aforementioned filings in that it lists Missouri officers and directors yet provides a Scott, Mississippi address for the company. Defendant characterizes this filing as being a "clerical oversight," but this argument carries little weight in light of the fact that defendant's other corporate representatives had repeatedly made the same "oversight" in post-merger corporate filings. Indeed, to reiterate, another assistant treasurer had specifically represented that defendant's "principal place of business" was in Mississippi even after the merger, and plaintiff has submitted further exhibits showing similar post-merger filings in Tennessee and other jurisdictions.

The court would also note that defendant's proof is less than precise as it relates to the nature of the activities which are carried out at its various locations. As noted previously, the Fifth Circuit in *Teal Energy* emphasized that a corporation's principal place of business is more likely to be its "nerve center" in cases where the its business is "passive" in nature and its operations are "far flung." It appears from the evidence before the court that defendant's business involves the active manufacture of products and that Mississippi is the location where the most important production activity takes place. With regard to the scope of its operations, defendant asserts in its brief that:

> D&PL operates the largest and longest running private cotton seed company and breeding program in the world. On January 28, 2008 and thereafter, D&PL maintained fifteen research centers, fourteen operations facilities, and thirteen international offices. . . . Each of its research centers and operations facilities is equally important to D&PL's activities, and none of them, including the production facility in Scott, Mississippi, is autonomous.

5

Defendant cites no record excerpts in support of this assertion, an omission which stands in notable contrast to the remainder of its brief, where it is careful to support its factual assertions with citations to the record.

This court thus has no factual basis upon which it might conclude, as defendant suggests, that its Mississippi production facility is of no particular importance in the grand scheme of its operations. To the contrary, the court would note that defendant has submitted an affidavit in which its former President W. Thomas Jagodinksi asserts that:

> As President and Chief Executive Officer of Delta And Pine Land Company, I was responsible for coordinating and controlling all activities occurring at all physical locations of the company's national and international operations. The great bulk of these duties and activities were centered in Scott, Mississippi.

Jagodinksi's affidavit thus suggests that, prior to the merger, Scott, Mississippi was the location where the "great bulk" of defendant's activities were centered. While it seems clear that, after the merger, many of defendant's corporate administrative functions were relocated to Missouri, it appears that the active production operations remained in Mississippi. Indeed, defendant's employee Randy Dismuke asserts in his affidavit that the current activities in Scott, Mississippi involve "cotton breeding and development" and "seed stock production," and these appear to represent the core activities of defendant's business, which does not appear to be "passive" in nature, within the meaning of *Teal Energy*.

Thus, even assuming *arguendo* that defendant's corporate "nerve center" had moved to Missouri by the filing of this action, the evidence before the court suggests that defendant's business involves the active production of cotton seeds and that Mississippi is the location where this production largely takes place. If this is not the case, then defendant has failed to meet its burden of so proving, particularly since it is well established that "doubts regarding whether

6

removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.,* 200 F.3d 335, 339 (5th Cir. 2000).

If this court were to erroneously give defendant the benefit of the doubt regarding the jurisdictional basis for this and other similar removals, then this might well result in the voiding on appeal of a great deal of litigation in this and other federal courts. Such a result would clearly be contrary to considerations of judicial economy, and there is no question that the Circuit Court of Bolivar County has subject matter jurisdiction in this case. The court therefore concludes that defendant has failed to establish that, as of the filing of the complaint, its principal place of business had moved from Mississippi to Missouri. Diversity of citizenship is lacking in this case, and plaintiff's motion to remand is due to be granted.

It is therefore ordered that plaintiff's motion to remand [19-1] is granted.

This court's determination that defendant's principal place of business was in Mississippi as of the filing of this lawsuit dictates that identical motions to remand filed in the following actions pending before this court be granted:

2:08cv104; 2:08cv109; 2:08cv110; 2:08cv113; 2:08cv116; 2:08cv120;

2:08cv123; 2:08cv126; 2:08cv128; 2:08cv135; 2:08cv136; 2:08cv137;

2:08cv145; 2:08cv146; 2:08cv147; 2:08cv149; 2:08cv150; 2:08cv152.

SO ORDERED, the 2nd day of December, 2008.

/s/ MICHAEL P. MILLS
CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI